**GRENZEBACH CORPORATION**

565233
**DOCKET NO.**

**SEC. 8**

**19TH JUDICIAL DISTRICT COURT**

**VERSUS**

**WPS INDUSTRIES, INC. AND
LEXINGTON INSURANCE
COMPANY**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**PETITION FOR DAMAGES**

NOW INTO COURT, comes **GRENZEBACH CORPORATION**, domiciled in Newnan,

Coweta County, Georgia, who respectfully represents:

1.

Made Defendants are:

A.    **WPS INDUSTRIES, INC.,** a domestic company authorized to do and doing business in the State of Louisiana, who has by operation of Louisiana Revised Statute 13:3471 appointed Anthony G. Clark as its agent for service of process and can be served at 3300 English Turn, Ruston, Louisiana 71270; and

**LEXINGTON INSURANCE COMPANY,** a foreign insurance company authorized to do and doing business in the State of Louisiana, who has by operation of Louisiana Revised Statute 13:3471 appointed Jay Dardenne, Secretary of State for the State of Louisiana as its agent for service of process and can be served at 8549 United Plaza Blvd., Baton Rouge, Louisiana.

2.

Plaintiff, GRENZEBACH CORPORATION, contracted with Defendant, WPS

INDUSTRIES, INC., a Louisiana corporation, to design and fabricate certain equipment at its facility

located in Lincoln Parish, Louisiana.    At the time of the incident sued upon, Defendant, WPS

INDUSTRIES, INC., was insured by LEXINGTON INSURANCE COMPANY, a foreign insurer,

and according to Article 42 of the Louisiana Code of Civil Procedure, venue is proper in East Baton

Rouge Parish, Louisiana.

3.

On or about January 13, 2002, Plaintiff, GRENZEBACH CORPORATION, contracted with

Defendant, WPS INDUSTRIES, INC. (the Contract) for sufficient consideration, to design and

fabricate certain equipment to be manufactured in Louisiana and transported to Blandon,

Pennsylvania, and installed by Defendant, WPS INDUSTRIES, INC. (the Project) at the facility of

one of Plaintiff's most valued customers, James Hardie Building Products (Hardie), which Hardie

would thereafter use to manufacture its own product, Hardie Plank. Specifically, the Contract called

CERTIFIED TRUE COPY
005069
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA.
FILED

EXHIBIT
A

for the design of a customized system to be utilized by Hardie in the process of manufacturing

Hardie Plank and for packaging it for shipment to customers.

4.

After transporting and installing the equipment at its desired location, it became evident to

Hardie and Plaintiff that the equipment, due to design defects, did not perform properly, resulting in

problems which lingered for months and said problems increased, rather that decreased.  Plaintiff

requested on numerous occasions that Defendant, WPS INDUSTRIES, INC., correct the defectively

designed equipment, however, Defendant, WPS INDUSTRIES, INC. failed to make the appropriate

corrections.

5.

Due to the unsatisfactory nature of the performance and work product of Defendant's, WPS

INDUSTRIES, INC.'s work, Hardie informed Plaintiff that Defendant, WPS INDUSTRIES, INC.

would not be allowed to perform any additional work on the Project.  Further, Hardie demanded that

Plaintiff cause others to immediately take steps to re-design the equipment so as to remedy the

problems and deficiencies caused by Defendant's, WPS INDUSTRIES, INC.'s defective design.

6.

In an effort to save the important business relationship between Plaintiff and Hardie, Plaintiff

was forced to adhere to the provisions of the Contract between Plaintiff and Defendant, WPS

INDUSTRIES, INC., which specifically provided that if Defendant, WPS INDUSTRIES, INC. failed

to eliminate indicated defects, Plaintiff had the right to initiate the necessary measures to correct the

deficiencies at Defendant's, WPS INDUSTRIES, INC.'s, expense and risk.

7.

Pursuant to the terms of said Contract, Plaintiff exercised its rights and caused the

deficiencies in Defendant's, WPS INDUSTRIES, INC.'s design to be performed by others.

8.

Plaintiff further advised Defendant, WPS INDUSTRIES, INC. that, pursuant to the Contract,

all costs associated with having the deficiencies corrected would be charged to Defendant against the

remaining balance of the Contract.

9.

The deficiencies described above were caused solely and proximately by the gross and

flagrant recklessness, carelessness, negligence and fault of WPS INDUSTRIES, INC. in the

following, non-exclusive, particulars, to-wit:

    A.    Defective work product;

    B.    Failure to properly design equipment;

    C.    Failure to remedy defectively designed equipment;

    D.    Failure take monetary responsibility from Plaintiff in correcting the defectively designed equipment;

    E.    Any and all other damages which shall be proven at trial of this matter.

10.

Plaintiff is informed, believes, and therefore alleges that at the time of the Project WPS INDUSTRIES, INC. had a policy of Architects & Engineers Professional Liability insurance with LEXINGTON INSURANCE COMPANY, insuring against the negligent acts, defective work and improper design of WPS INDUSTRIES, INC. and under the laws of the State of Louisiana was in full force and effect at the time of the incident and which insurance inures to the benefit of Plaintiff under the provisions of the Louisiana Direct Action Statute, Revised Statute 22:655.

11.

Plaintiff further alleges on information and belief that under the terms of said policy, LEXINGTON INSURANCE COMPANY, obligated itself to pay any and all damages caused to others as a result of the negligence, defective work and improper design of WPS INDUSTRIES, INC., the subcontractor of said Project, covered by said policy at the time of said incident.

12.

Plaintiff alleges on information and belief that at the time of the incident described above, WPS INDUSTRIES, INC. was covered by an architects & engineers professional liability insurance policy, which had been sold and delivered by LEXINGTON INSURANCE COMPANY and was then in full force and effect by virtue of the payment of premiums and otherwise.

13.

WPS INDUSTRIES, INC. and LEXINGTON INSURANCE COMPANY are therefore liable in solido unto the Plaintiff in said incident, which are itemized and set out hereafter.

14.

As a result of the combined fault, negligence, and/or strict liability of the Defendants in causing the aforementioned incident, Plaintiff GRENZEBACH CORPORATION, suffered severe injuries including, but not limited to the following:

A.    Expenses in remedying the deficiencies caused by Defendant, WPS
      INDUSTRIES, INC. at the Project which Plaintiff is entitled to recover from
      Defendant, WPS INDUSTRIES, INC., less any monies which Plaintiff would
      otherwise have owed Defendant, WPS INDUSTRIES, INC. pursuant to the
      Contract;

B.    Loss of Contracts;

C.    Any and all other injuries to be shown upon trial of this matter.

15.

Pursuant to the provisions of the Louisiana Code of Civil Procedure, Article 1423, et seq., the
Plaintiff is entitled to a certified copy of any insurance policies issued to and/or otherwise insuring
WPS INDUSTRIES, INC. for the claims made by Plaintiff herein.   Plaintiff herein requests a
certified copy of any and all such policies of insurance within thirty (30) days of service of the
petition upon them.

16.

The Plaintiff herein, GRENZEBACH CORPORATION, is therefore entitled to damages for
the items set forth above in such amounts as are reasonable in the premises.

WHEREFORE Plaintiff PRAYS:

1.    That certified copies of this petition, together with citation, be issued and served
      according to law on the Defendants:

      A.    WPS INDUSTRIES, INC., a domestic company authorized to do and doing
            business in the State of Louisiana, who has by operation of Louisiana Revised
            Statute 13:3471 appointed Anthony G. Clark as its agent for service of
            process and can be served at 3300 English Turn, Ruston, Louisiana 71270;
            and

      B.    LEXINGTON INSURANCE COMPANY, a foreign insurance company
            authorized to do and doing business in the State of Louisiana, who has by
            operation of Louisiana Revised Statute 13:3471 appointed Jay Dardenne,
            Secretary of State for the State of Louisiana as its agent for service of process
            and can be served at 8549 United Plaza Blvd., Baton Rouge, Louisiana.

1.    After the elapse of all legal delays and proceedings had, there be judgment against
      WPS INDUSTRIES, INC. and LEXINGTON INSURANCE COMPANY, in solido,

and in favor of GRENZEBACH CORPORATION, in such amounts as are reasonable

in the premises;

2.    For all necessary orders and decrees as may be required or proper for full, general and

equitable relief; and

3.    For legal interest from date of judicial demand on all amounts awarded, and for all

costs of these proceedings.

RESPECTFULLY SUBMITTED:

MURPHY LAW FIRM

PEYTON P. MURPHY
Bar Roll # 22125
7035 Jefferson Highway
Baton Rouge, La. 70809
Telephone: (225) 928-8800
Facsimile: (225) 928-8802

**ATTORNEY FOR PLAINTIFF**

**PLEASE SERVE:**

WPS INDUSTRIES, INC.
Anthony G. Clark, Agent for service of process
3300 English Turn
Ruston, Louisiana 71270;

LEXINGTON INSURANCE COMPANY
through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG. 2.5 2005

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WPS INDUSTRIES, INC.              :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :
                                   :        Civil Action No.
GRENZEBACH CORPORATION             :        1:05-cv-968-WBH
                                   :
        Defendant.                 :
                                   :
                                   :

## ANSWER AND COUNTERCLAIM

COMES NOW Defendant in the above-styled civil action, Grenzebach Corporation ("Defendant"), and hereby makes and files this its Answer, Defenses and Counterclaim to Plaintiff's Petition, respectfully showing the Court as follows:

### FIRST DEFENSE

Plaintiff's Petition fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Venue in this action would be more properly laid in the Newnan Division of the United States District Court for the Northern District of Georgia.

### THIRD DEFENSE

Plaintiff's claims are or may be barred by the doctrine of payment.

### FOURTH DEFENSE

Plaintiff's claims are or may be barred by the doctrine of failure of consideration.

### FIFTH DEFENSE

Responding to the numbered paragraphs of Plaintiff's Petition, Defendant shows the Court the following:

EXHIBIT
B

(b)     that Defendant have a trial by jury;

(c)     that judgment be entered in Defendant's favor against Plaintiff on Defendant's

         Counterclaim; and

(d)     that Defendant have such other and further relief as this Court may deem just and

         proper.

Respectfully submitted this _____ day of July, 2005.

                                        GLOVER & DAVIS, P.A.

10 Brown Street                         BY: _____
Newnan, Georgia 30263                        J. Littleton Glover, Jr.
(770) 683-6000 Phone                         Ga. Bar No. 297900
(770) 683-6010 Fax                           Taylor B. Drake, Esq.
                                             Ga. Bar No. 679559
                                             Nathan T. Lee, Esq.
                                             Ga. Bar No. 443770

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WPS INDUSTRIES, INC.                           :
                                               :
        Plaintiff,                             :
                                               :
v.                                             :
                                               :
GRENZEBACH CORPORATION                         :    Civil Action No.
                                               :    1:05-cv-968-WBH
        Defendant.                             :
                                               :
                                               :

## CERTIFICATE OF SERVICE

        This is to certify that I have this day served the foregoing "**ANSWER AND COUNTERCLAIM**" by depositing a copy of same in the United States mail in an envelope with sufficient postage attached thereto and addressed to

        Scott M. McMickle
        Dennis, Corry, Porter and Smith, LLP
        Piedmont Fourteen
        3535 Piedmont Road, Suite 900
        Atlanta, Georgia 30305

        This _____ day of July, 2005.


                                    GLOVER & DAVIS, P.A.


10 Brown Street                 BY: _____
Newnan, Georgia 30263               J. Littleton Glover, Jr.
(770) 683-6000 Phone                Ga. Bar No. 297900
(770) 683-6010 Fax                  Taylor B. Drake, Esq.
                                    Ga. Bar No. 679559
                                    Nathan T. Lee, Esq.
h:\Grenzebach\WSPindustries\Pleadings\#71405.Answer.wpd    Ga. Bar No. 443770

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WPS INDUSTRIES, INC.            :
                                :
        Plaintiff,              :
                                :
v.                              :
                                :       Civil Action No.
GRENZEBACH CORPORATION   :       1:05-cv-968-WBH
                                :
Defendant.                      :

## GRENZEBACH CORPORATION'S SECOND AMENDED COUNTERCLAIM

COMES NOW Grenzebach Corporation ("Grenzebach") and hereby amends

its Counterclaim in the above-styled matter as follows:

1.

Grenzebach incorporates by reference herein the allegations set forth in its

Counterclaim and First Amended Counterclaim.

2.

The amount referenced in Paragraph 15 of Grenzebach's Counterclaim (and

Paragraph 1 in Grenzebach's First Amended Counterclaim) is hereby amended

with the new amount being $484,169.75.



EXHIBIT
C

3.

At all times relevant hereto Plaintiff has acted in bad faith, been stubbornly litigious and has caused Grenzebach unnecessary trouble and expense.

4.

Grenzebach is therefore entitled to recover all its litigation expense, including but not limited to, its attorney's fees as allowed by O.C.G.A. § 13-6-11.

5.

Plaintiff, by and through counsel, consent to this amendment to the counterclaim.

Wherefore, Grenzebach respectfully prays:

a)      that Plaintiff's Petition be dismissed with all costs cast against Plaintiff;

b)      that judgment be entered in Grenzebach's favor against Plaintiff on Grenzebach's Counterclaim and amendments thereto; and

c)      that Grenzebach have such other and further relief as this Court may deem just and proper.

Respectfully submitted this 28th day of March, 2007.

GLOVER & DAVIS, P.A.
10 Brown Street
P. O. Box 1038
Newnan, Georgia 30264
Telephone: (770) 683-6000
E-mail: nlee@gloverdavis.com

BY:   s/ Nathan T. Lee, Esq.
J. Littleton Glover, Jr.
Ga. Bar No. 297900
Taylor B. Drake, Esq.
Ga. Bar No. 679559
Nathan T. Lee, Esq.
Ga. Bar No. 443770
Attorneys for Grenzebach Corporation


PLAINTIFF CONSENTS TO THE FILING OF
THIS SECOND AMENDED COUNTERCLAIM

CONSENTED TO BY:

s/ Ryan Strickland by Nathan T. Lee with express permission
Scott W. McMickle, Esq.
Ga. Bar No. 49779
Ryan T. Strickland, Esq.
Ga. Bar No. 687904
Dennis, Corry, Porter and Smith, LLP
Piedmont Fourteen
3535 Piedmont Road, Suite 900
Atlanta, Georgia 30305

h:\Grenzebach\WPS\Pleadings\031907.2ndAmendedCounterclaim

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WPS INDUSTRIES, INC. | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No. |
| GRENZEBACH CORPORATION | : | 1:05-cv-968-WBH |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing **GRENZEBACH CORPORATION'S SECOND AMENDED COUNTERCLAIM** by depositing a copy of same in the United States mail in an envelope with sufficient postage attached thereto and addressed to:

Scott W. McMickle, Esq.
Ryan T. Strickland
Dennis, Corry, Porter and Smith, LLP
Piedmont Fourteen
3535 Piedmont Road, Suite 900
Atlanta, Georgia 30305

This 28th day of March, 2007.

BY:   s/ Nathan T. Lee, Esq.

GLOVER & DAVIS, P.A.              J. Littleton Glover, Jr.
10 Brown Street                        Ga. Bar No. 297900
P. O. Box 1038                          Taylor B. Drake, Esq.
Newnan, Georgia 30264            Ga. Bar No. 679559
Telephone: (770) 683-6000       Nathan T. Lee, Esq.
E-mail: nlee@gloverdavis.com    Ga. Bar No. 443770
                                             Attorneys for Grenzebach Corporation

# LEXINGTON INSURANCE COMPANY
Wilmington, Delaware
(A Stock Insurance Company)
Administrative Offices: 100 Summer Street, Boston, MA 02110

## ARCHITECTS & ENGINEERS PROFESSIONAL LIABILITY POLICY

Policy No.:    2344815 - 02                                    Renewal of:    2344815 - 01

NOTICE: This is a CLAIMS-MADE POLICY. Subject to the terms and conditions of the Policy, this insurance applies only to those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD. By acceptance of this Policy the insured agrees that the statements
in the Declarations, the Application and any attachments are the insured's agreements and material representations. The insured also agrees that this Policy embodies all agreements existing between the insured and the Company. Please read and review the Policy carefully and discuss the coverage with your insurance representative.

## DECLARATIONS

ITEM 1.      Named Insured:    WPS INDUSTRIES INC
             DBA:              WPS INDUSTRIES INC
             Address:          167 DURAFLAKE RD.
                               SIMSBORO, LA 71275

ITEM 2.      Policy Period:
             From: 10/01/2006                    To: 10/01/2007
             at 12:01 A.M. standard time at the address of the insured stated above.

ITEM 3.      Limits of Liability:      $2,000,000              Each Claim
                                       $2,000,000              Annual Aggregate

ITEM 4.      Deductible:               $5,000                 Each Claim

ITEM 5.      Premium:                  $11,743.00

             Advance Premium           Annual Minimum Premium        Minimum Earned Premium
                                                                     At Inception
             $11,743.00                   $11,743.00                 $2,935.75

ITEM 6.      Audit Rate:    FLAT

ITEM 7.      Extended Reporting Period:      12 Months at   100 % of the total annual premium

ITEM 8.      Retroactive Date:    05/12/1997

ITEM 9.      Endorsements made a part of this policy:

             1. Application (attached)

             2. Endorsements listed on the attached Forms Schedule

                                        _____
                                        Authorized Representative or
                                        Countersignature (in states where Applicable)

LEX-AENA (Ed. 02/00)                    Insured Copy



# FORMS SCHEDULE

Named Insured:     WPS INDUSTRIES INC
D/B/A              WPS INDUSTRIES INC

Policy Number:     2344815 - 02                    Effective Date:     10/01/2006

| Form Number | | Title |
|---|---|---|
| CertRenewal | | Certificate of Renewal |
| 91222 | 0706 | NYAG Policyholder Notice |
| Dec LEXAENA | 0200 | Architects & Engineers PL Declarations |
| LEXAENA | 0100 | A&E PL Policy Text |
| PRG2028 | 0805 | Amendatory Endorsement - Coverage Territory |
| PRG4005 | 0404 | Policy Territory |
| PRG6004 | 0303 | Accident Insurance Endorsement |
| AE012 | 0702 | Construction Management Definition |
| AE018 | 0702 | Customized Systems Design Endorsement |
| AE021 | 0702 | Amend Exclusion H3 |
| AE022 | 0702 | Additional Claim Exclusions |
| ANI | 1197 | Additional Named Insured Mid-Term Endorsement |

# LEXINGTON INSURANCE COMPANY

In consideration of the payment of the premium and deductible by the Named Insured and in reliance upon the statements in the **Insured's** Application incorporated herein by reference, the Company agrees with the **Insured** subject to all of the terms, exclusions and conditions of this policy, as follows:

## I. INSURING AGREEMENTS

**A.    COVERAGE: CLAIMS-MADE CLAUSE:**

The Company will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** because of **claims** for a **Breach of Professional Duty** in the rendering or failure to render **professional services** to others:

(a)    by the **Insured**; or
(b)    for which the **Insured** is legally liable as a result of the performance of others.

For this coverage to apply, all of the following conditions must be satisfied:

1.    The **Breach of Professional Duty** forming the basis of the **claim** must arise from **professional services** that take place subsequent to the Retroactive Date stated in the Declarations.

2.    Prior to the Effective Date of this policy stated in the Declarations, no officer, director, principal, partner, insurance manager or risk manager of the **Insured** had knowledge of such actual or alleged **Breach of Professional Duty** or circumstance likely to give rise to a **claim.**

3.    **Claim** must first be made against the **Insured** during the **policy period.**

4.    The **Insured** must report the **claim** to the Company, in writing, as soon as practicable. Any **claim** so reported will be deemed reported during the **policy period** if so reported no later than within the sixty (60) day period next succeeding the expiration of the **policy period.**

**B.    TERRITORY:**

The insurance afforded by this policy applies to a **Breach of Professional Duty** arising out of **professional services** that take place in and result in a **claim** brought within:

1)    the United States of America, its territories or possessions or Puerto Rico; and
2)    elsewhere in the world.

LEX – AENA (01/00)                         1

**C.     DEFENSE PROVISIONS:**

1)     When **any claim** against the **Insured** for which coverage is provided under this policy is made or brought within the United States of America, its territories or possessions, or Puerto Rico, the Company has the right to investigate such claim, and the duty to defend any such claim with defense counsel of the Company's choice, even if such claim is groundless, false or fraudulent. The Company's obligation to defend or to continue to defend any claim as provided in this subparagraph 1) shall no longer exist after the applicable limit of the Company's liability has been exhausted by payment of claim expenses or damages, or both.

2)     When any claim against the Insured for which coverage is provided under this policy is made or brought outside the areas described in subparagraph 1) above, the Company shall not be obligated to assume charge of the investigation, defense or settlement of any such claim but the Company shall have the right and shall be given the opportunity to associate with the Insured in the investigation and defense of any such claim. The Insured shall, under the Company's supervision, make or cause to be made such investigation and defense as is reasonably necessary. Subject to prior written authorization by the Company, the Insured may also effect settlement. The Company shall reimburse the Insured for damages and the reasonable and necessary costs of investigating and defending any such claim such as (1) fees charged by any lawyer selected by the Insured to defend the claim, and (2) all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a decision regarding a claim as authorized by the Company. For purposes of computing the amount of the Limits of Liability and Deductible amount under this policy, such reasonable costs shall be construed as claim expenses.

**D.     SETTLEMENT PROVISIONS:**

The Company will not settle or compromise any claim without the consent of the Insured. If, however, the Insured refuses to consent to a settlement or compromise recommended by the Company and elects to contest such claim or continue legal proceedings in connection with such claim, then the Company's liability for the claim shall not exceed the amount for which the claim could have been so settled plus claim expenses incurred up to the date of such refusal subject to the applicable limit of liability under this policy.

**E.     CLAIM EXPENSES:**

Claim expenses shall be paid by the Company and such payments reduce the available limit of liability. The Insured must first pay any applicable deductible amounts.

## II. EXCLUSIONS

This policy does not provide coverage and the Company will not pay claim expenses or damages for:

A.    any claim arising from any dishonest, fraudulent, or criminal conduct committed intentionally by or at the direction of any **Insured**; however, this exclusion shall not apply to the Named Insured or to any **Insured** who did not commit, participate in or have knowledge of such conduct;

B.    any claim made by any **Insured** against any other **Insured**;

C.    any claim based upon or arising out of **Wrongful Termination** of any employee of the **Insured**; **Discrimination** involving any employee of the **Insured**; or **Sexual Harassment** of any employee of the **Insured**;

D.    any claim made against an **Insured** based upon or arising out of any **Insured's** involvement as a partner, officer, director, stockholder, employer or employee of any business enterprise not named in the Declarations;

E.    any claim made by or on behalf of any business enterprise that wholly or partly owns the **Insured** or which to any extent controls, operates or manages an **Insured**, or that is wholly owned or in which an **Insured** has a greater than 25% ownership, or which is controlled, operated or managed by an **Insured**;

F.    any claim based upon or arising out of the design or manufacture of any goods or products developed by the **Insured** for multiple sale or mass distribution, including but not limited to, computer programs and software;

G.    any claim based upon or arising out of express warranties or guarantees unless such liability would have attached to the **Insured** in the absence of an express warranty or guaranty and such liability arises out of a **Breach of Professional Duty** by the **Insured** in the performance of **professional services**;

H.    any claim based upon or arising out of the cost to repair or replace any faulty workmanship, assembly, construction, erection, fabrication, installation or remediation if such work is performed in whole or in part by:

    1.    the **Insured**; or

    2.    any enterprise and/or any subsidiary of any enterprise that any **Insured** controls, manages, operates or holds ownership in or by any enterprise that controls, manages, operates or holds ownership in an **Insured**;

LEX – AENA (01/00)                    3

I.   to any **claim** based upon or arising out of liability of others assumed by any **Insured** under any contract or agreement unless such liability arises as a result of a **Breach of Professional Duty** by the **Insured** in the performance of **professional services**;

J.   punitive or exemplary **damages**, fines or penalties; except, this exclusion does not apply to punitive or exemplary **damages** arising solely out of a **claim** for libel or slander and such payment by the Company is not held to be against public policy;

K.   any **claim** for **bodily injury or personal injury** sustained by any employee of any **Insured** while engaged in employment by any **Insured**, or by any person whose right to assert a **claim** against the **Insured** arises by reason of any employment, blood, marital or other relationship with the employee;

L.   any obligation for which an **Insured** or any other party must pay under any unemployment, Workers' Compensation, disability benefits, or other similar laws;

M.   any **claim** based upon or arising out of nuclear reaction, radiation or contamination, under any circumstances and regardless of cause, within or originating from a **nuclear facility**.

## III. DEFINITIONS

A.   **Bodily injury** means bodily injury, sickness, disease, mental anguish or emotional distress sustained by a person, including death resulting therefrom.

B.   **Breach of Professional Duty** means an error, omission or other act that causes liability in the performance or nonperformance of **professional services** to others by the **Insured** or for which the **Insured** is legally liable as a result of the performance of others.

C.   **Claim** means any demand against the **Insured** for money or services, including but not limited to, the service of suit or institution of arbitration proceedings.

D.   **Claim Expenses** means;

   1.   fees charged by any lawyer designated by the Company;

   2.   all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim** if authorized by the Company.  **Claim Expenses** shall not include the salaries of any employee of the Company.

E.   **Damages** means any amount which an **Insured** is legally obligated to pay for any **claim** to which this insurance applies and shall include judgments and settlements, provided always that **damages** shall not include the return or withdrawal of professional fees, sanctions, fines or penalties imposed by law or other matters

LEX – AENA (01/00)                    4

that may be deemed uninsurable under the law pursuant to which this policy shall be construed.

F.   **Discrimination** means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy, national origin or sexual orientation.

G.   **Insured** means:

    1.   the Named Insured listed in Item 1. of the Declarations;

    2.   any person who is or was a partner, officer, director, stockholder or employee of the Named Insured but only while rendering **professional services** on behalf of the Named Insured;

    3.   the heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. above, in the event of death, incapacity or bankruptcy but only as respects liability arising out of **professional services** rendered on behalf of the Named Insured prior to such **insured's** death, incapacity or bankruptcy;

    4.   a former partner, officer, director or employee of the Named Insured while rendering **professional services** on behalf of the Named Insured;

    5.   contract or leased personnel rendering **professional services** on behalf of the Named Insured;

    6.   joint ventures in which the Named Insured is named as a co-venturer, but only as respects the **insured's** legal liability arising out of the **insured's** participation in such joint venture.

H.   **Mediation** means non-binding intervention by a neutral third party.

I.   **Nuclear Facility** means the site at which a nuclear reactor is located or where nuclear waste or material is disposed of or stored.

J.   **Personal Injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

    1.   false arrest, detention or imprisonment;

    2.   malicious prosecution;

    3.   wrongful entry into, or eviction of a person from a room, dwelling, or premises that the person occupies;

    4.   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.      oral or written publication of material that violates a person's right of privacy.

K.    **Policy Period** means the period from the effective date of this policy to the expiration date or earlier termination date, if any, of this policy.

L.    **Professional Services** means those services that the **Insured** is legally qualified to perform for others in their capacity as an architect, engineer, land surveyor, landscape architect, construction manager or as specifically defined by endorsement to this policy.

M.    **Property Damage** means:
1.      physical injury to or destruction of tangible property, including all resulting loss of use of that property, or
2.      clean-up costs; or
3.      loss of use of tangible property that has not been physically injured or destroyed.

N.    **Sexual Harassment** means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

O.    **Wrongful Termination** means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

## IV. LIMITS OF LIABILITY AND DEDUCTIBLE

A.    LIMIT OF LIABILITY – EACH CLAIM:

Subject to the Limit of Liability Aggregate, the liability of the Company for each covered claim shall not exceed the amount stated in the Declarations for **Each Claim**. This limit is the maximum amount of **claim expenses** or **damages** or both that the Company will pay on each covered **claim**. The limit of liability shall apply in excess of the deductible.

B.    LIMIT OF LIABILITY – **AGGREGATE**:

The liability of the Company shall in no event exceed the amount stated in the Declarations as aggregate as a result of all covered **claims**. This limit is the total amount of **claim expenses** or **damages** or both that the Company will pay under this policy for all covered **claims** including those reported as provided for in Condition C., Extended Reporting Period below.

Once the Limits of Liability have been exhausted, the Company will not defend or pay **damages** or **claim expenses** for any **claim**.

LEX – AENA (01/00)                              6

**C.   MULTIPLE INSUREDS:**

The number of **Insureds** covered by this policy shall not operate to increase the Limits of Liability as specified above.

**D.   MULTIPLE CLAIMS:**

Two or more covered **claims** arising out of a single **Breach of Professional Duty** or any series of related **Breaches of Professional Duty** will be considered a single **claim**. This policy shall only apply if the first or earliest **claim** arising from such **Breach of Professional Duty** is made during the **policy period**. These provisions apply regardless of the number of **Insureds** involved in such a **claim**, the number of **claims** made, or the number of people or organizations that make the **claims**.

The number of **claims** made or the number of people or organizations that make **claims** shall not operate to increase the Limits of Liability as specified above.

**E.   DEDUCTIBLE – EACH CLAIM:**

The deductible amount stated in the Declarations applies to each **claim** and shall be paid by the **Insured**. The deductible shall be applied to the payment of **damages** or **claim expenses** or both.

The Company may advance payment of part or all of the deductible amount and, upon notification of such payment made, the **Insured** must promptly reimburse the Company for the deductible amounts advanced by the Company.

Until a **claim** is made, the deductible does not apply to **claim expenses** incurred by the Company or at the Company's specific request as respects possible **claims** reported under V. Conditions B. Reporting of Possible **Claims**.

**F.   MEDIATION:**

If the **Insured** and the Company jointly agree to utilize **mediation** as a means to resolve a **claim** made against the **Insured**, and if such **claim** is resolved through the use of **mediation**, then the **Insured's** deductible obligation shall be reduced by 50% subject to a maximum reduction of $15,000. The Company shall reimburse the **Insured** for any applicable deductible payment made prior to the **mediation** as soon as practicable after the conclusion of the **mediation**.

**G.   REIMBURSEMENT:**

The Company will reimburse the **Insured**, upon written request, for loss of earnings by the **Insured** as a result of being required to attend, at the Company's request, a **mediation**, arbitration, deposition, or trial related to a covered **claim**, subject to the following:

1.   No reimbursement will apply to the first three (3) days attendance of the **Insured** required for each **claim**;

2.   Such loss of earnings reimbursement will not be considered as payment of a **claim** or **claim** expenses and will be in addition to the Limits of Liability.  Such reimbursement is not subject to the **deductible**.

3.   Such loss of earnings reimbursement shall not exceed $400. per day for the **Insured** per **claim**, subject to a maximum annual aggregate reimbursement to all **Insureds** of $5,000 for all **claims**.

## V. CONDITIONS – CLAIMS

A.   **INSURED'S DUTIES WHEN THERE IS A CLAIM:**

As a condition precedent to the right of coverage under this policy, **the Insured** must do the following:

1.   If a **claim** to which this policy applies is made against the **Insured**, the **Insured** must give written notice, as soon as practicable, and as otherwise required by this policy, to:

> Lexington Insurance Company
> 100 Summer Street
> Boston, MA 02110
> Attn: Claim Department

2.   The **Insured** must cooperate with the Company.  The Company may require that the **Insured** submit to examination under oath, if required, produce and make available all records, documents and other materials which the Company deems relevant to the **claim**.  With respect to any **claim** as described in subparagraph 1) of Section C., Defense Provisions, of this policy:

   (a)   the **Insured** must also, at the Company's request, attend hearings, depositions and trials;

   (b)   in the course of investigation or defense, provide the Company with written statements as requested by the Company or the **Insured's** attendance at meetings with the Company; and

   (c)   the **Insured** must assist the Company in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses, all without charge to the Company.

3.   If the **Insured** has the right to either accept or reject arbitration of any **claim**, the **Insured** shall exercise such right only with the written consent of the Company.

4.   Except and to the extent otherwise provided in subparagraph 2) of Section C., Defense Provisions, of this policy, the

Insured must not make any payment, admit any liability, settle any claims or assume any obligations without the prior written consent of the Company.

5.   The Insured must do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment that the Insured may have.

6.   The Insured shall refrain from discussing the facts and circumstances of any claim with anyone other than legal counsel or representatives of the Company.

B.   REPORTING OF POSSIBLE CLAIM:

This policy will provide coverage for a specific incident, circumstance or situation (possible Claim), other than a claim that the Insured first becomes aware of during the policy period of this policy, and which possible claim reasonably may lead to or form the basis of a claim for which this policy would otherwise provide coverage. The Insured must give written notice to the Company of any such possible claim as soon as practicable but not later than the end of the policy period.

The written report of a possible claim must include all available information about the possible claim.

This report must include:

1.   the potential claimant's name and address;

2.   a description of the professional services provided or that should have been provided;

3.   an explanation of the type of claim that is anticipated.

Any claim that may subsequently be made against the Insured arising out of such possible claim shall be considered a claim first made against the Insured during the policy period of this policy and shall be subject to all terms and conditions of this policy.

The Insured shall comply with all subparagraphs in Condition V.A., Insured's Duties When There Is A claim.

Until claim is made against the Insured, any claim expenses incurred by the Company to investigate or monitor such possible claim shall not be considered an obligation under Section IV. E., Deductible – Each claim.

C.   EXTENDED REPORTING PERIOD:

If this policy shall be canceled or nonrenewed by the Company or the Named Insured for reasons other than the Named Insured's non-payment of premiums or deductibles when due or non-compliance with the terms and conditions of this policy, then the Named

Insured upon payment of an additional premium specified in Item 6 of the Declarations shall have the option to extend such insurance as is afforded by this policy. This extension will apply only to claims first made against the **Insured** during the specified number of months in Item 6 of the Declarations following immediately upon the effective date of such cancellation or expiration, but only by reason of a **Breach of Professional Duty** arising out of **professional services** which happen subsequent to the Retroactive Date and prior to the effective date of such cancellation or expiration, which is otherwise covered by this insurance. This extension of coverage for **claims** made subsequent to expiration of the **policy period**, if purchased, must be endorsed hereto and shall hereinafter be referred to as the Extended Reporting Period.

If however, this insurance is immediately succeeded by similar claims-made insurance coverage for which the Retroactive Date is the same as or earlier than that shown in Item 7 of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to an Extended Reporting Period.

The quotation of a different premium and/or deductible amount and/or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this option.

As a condition precedent to the Named Insured's right to purchase the Extended Reporting Period, the Named Insured must have satisfied all conditions of this policy and must have tendered all premiums and deductibles due.

The Named Insured's right to purchase the Extended Reporting Period must be exercised by notice in writing not later than sixty (60) days after the cancellation or expiration date of this policy and must include tender of the entire premium for the Extended Reporting Period. If such notice and tender are not so given to the Company, the Named Insured shall not at a later date be able to exercise such option.

At the commencement of any Extended Reporting Period, the entire premium therefor shall be considered earned, and in the event the Named Insured terminates the Extended Reporting Period before its term, for any reason, the Company shall not be liable to return to the Named Insured any portion of the premium paid for the Extended Reporting Period.

The fact that the insurance afforded by this policy may be extended by virtue of the Extended Reporting Period provision shall not in any way reinstate the aggregate limit or otherwise increase the limits of liability set forth in the Declarations.

D.    TRANSFER OF RIGHTS OF RECOVERY:

If there is a payment made by the Company, the Company shall be subrogated to all the **Insured's** rights of recovery against any

LEX – AENA (01/00)                    10

Person or organization as respects any payment made by the Company for damages or claim expenses. The Insured shall cooperate with the Company and do whatever is necessary to secure these rights. The Insured shall do nothing after a claim to waive or prejudice such rights. The Company agrees to waive this right of subrogation against the client of the Insured to the extent that the Insured had, prior to claim, a written agreement to waive such rights.

## OTHER CONDITIONS

E.  HOW OTHER INSURANCE APPLIES:

This insurance shall be excess of other valid insurance, whether collectable or not, available to the Insured unless such other insurance is written as specific excess over the limits provided by this policy.

F.  CHANGES MADE TO THIS POLICY:

The terms and conditions of this policy cannot be waived or changed except by specific written endorsement issued by the Company and made part of this policy.

G.  ASSIGNMENT OF THE INSURED'S INTEREST:

The interest of the Insured under this policy is not assignable to any other person or organization.

H.  CANCELLATION:

This policy may be canceled by the Named Insured by returning the policy to the Company or its authorized representatives. The Named Insured can also cancel this policy by written notice to the Company stating at what future date cancellation is to be effective. If the Named Insured cancels, earned premium shall be computed using the customary short rate table.

This policy can be canceled by the Company by written notice to the Named Insured, at the address last known to the Company. The Company will provide written notice at least thirty (30) days before cancellation is to be effective.

There are exceptions to the length of the notice that must be provided to the Named Insured. The Named Insured will only be entitled to at least ten (10) days notice if the Company cancels:

1.  because the Insured has failed to pay a premium when due; or

2.  because the Insured has failed to pay applicable deductible amounts due.

If the Company cancels, earned premium will be computed pro-rata, except that if the Company cancels for the reason specified in 1.

LEX – AENA (01/00)                    11

or 2. Above, earned premium will be computed in the same manner provided above when the Named Insured cancels.

The mailing of any notice of cancellation shall be sufficient proof of notice.

The effective date of cancellation terminates the **policy period.** Return of unearned premium is not a condition of cancellation. Unearned premium will be returned by the Company as soon as practicable.

I.   BANKRUPTCY:

Bankruptcy of insolvency of the **Insured** or the **Insured's** estate shall not relieve the Company of any of its obligations under this policy.

J.   APPLICATION:

The statements in the Application are the **Insured's** representations and are deemed material. This policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the Application shall be attached to and become part of this policy.

K.   AUDIT:

The Company may examine and audit the **Insured's** books and records at any time during the **policy period** and within three (3) years after the final termination of this policy, as far as they relate to this policy.

L.   ACTION AGAINST THE COMPANY:

No action shall be maintained against the Company by the **Insured** to recover for any loss under this policy unless, as a condition precedent thereto:

1.   the **Insured** has fully complied with all the terms and conditions of this policy; and

2.   the amount of such loss has been fixed or rendered certain:

    a.   by final judgment against the **Insured** after trial of the issues; or

    b.   the time to appeal such judgment has expired without an appeal being taken; or

    c.   if appeal is taken, after the appeal has been determined; or

    d.   the **claim** is settled in accordance with the terms and conditions of this policy.

In no event shall any action brought by anyone be maintained against the Company unless such action is brought within twenty-four (24) months from the time the right to bring action first becomes available.

**M.    FALSE OR FRAUDULENT CLAIMS:**

If the Insured refers any claim knowing such claim to be false or fraudulent, this policy shall become void and all insurance coverage hereunder shall be forfeited.

**N.    SERVICE OF SUIT**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this Condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, MA 02110 or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to send such process or a true copy thereof.

**O.    ARBITRATION**

Notwithstanding the Service of Suit Condition above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators, consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party.

LEX – AENA (01/00)                    13

The other party shall within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it. The two (2) Arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, each Arbitrator shall submit to the other Arbitrator a list of three (3) proposed individuals, from which list each Arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing, time and place selected by the umpire. Said hearings shall be held within thirty (30) days of the selection of the umpire. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the Arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear the expenses of its designated Arbitrator and shall jointly share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts. The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

Secretary

President

LEX – AENA (01/00)                                    14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT – COVERAGE TERRITORY**

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws or regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

All other terms, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in states where Applicable)

PRG 2028 (08/05)

**ENDORSEMENT**

## POLICY TERRITORY

Policy Territory means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

All other terms, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in states where Applicable)

PRG 4005 04/04

**THIS ENDORSEMENT ADDS ACCIDENT INSURANCE TO THE POLICY, PLEASE READ IT CAREFULLY.**

**ACCIDENT INSURANCE ENDORSEMENT**

The Policy is amended as follows:

I.  **ACCIDENT INSURANCE DECLARATIONS** - The following declarations are added to the policy and apply only with respect to the coverage provided by this endorsement:

(a) **Accident Insurance Effective Date:** Same as Policy Effective Date

(b) **Classification of Eligible Persons:** All Employees working at least 20 hours per week on behalf of the Named Insured.

(c) **Covered Activity (ies):** Coverage is provided for Injury sustained by a **Covered Person** while the **Covered Person** is traveling on behalf of or while actively performing the duties of his or her occupation for the named insured.

(d) **Principal Sum Amount** (per Covered Person): $50,000

(e) **Seat Belt Benefit Amount:** $10,000

(f) **AD&D and Paralysis Aggregate Limit:** $250,000 per accident

**WORDS AND PHRASES THAT APPEAR IN BOLD FACE PRINT IN THIS ENDORSEMENT HAVE SPECIAL MEANING
WITHIN THIS ENDORSEMENT. REFER TO THE ACCIDENT INSURANCE DECLARATIONS
ABOVE AND THE DEFINITIONS SECTION BELOW.**

**THIS ENDORSEMENT PROVIDES ACCIDENT ONLY COVERAGE. IT DOES NOT COVER SICKNESS OR DISEASE.**

**II. ACCIDENT INSURANCE** – The following Accident Insurance Coverage is added to the Policy. The provisions hereunder apply only with respect to the Accident Insurance provided by this endorsement:

**A. ACCIDENT INSURANCE INSURING AGREEMENT**

We will pay a benefit to the Covered Person (or, in the event of death, to the Covered Person's beneficiary) if that Covered Person suffers a loss covered under this endorsement arising from an Injury that results from an accident that occurs on or after the Accident Insurance Effective Date and during a Covered Activity. The Principal Sum Amount and the Covered Activity(ies) applicable to each Covered Person are set out in the Schedule. The benefit amount payable is subject to the Accident Insurance Reduction Schedule found below.

1. **Accidental Death & Dismemberment and Paralysis Benefit.** If Injury to a Covered Person results, within 365 days of the date of the accident that caused the Injury, in that Covered Person suffering any one of the losses or any type of paralysis specified below, the benefit we will pay will be based upon the indicated percentage of the Principal Sum Amount shown below for that loss or paralysis:

| For Loss of: | Percentage of Principal Sum Amount Payable |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |
| Quadriplegia | 100% |
| Paraplegia | 50% |
| Hemiplegia | 25% |

Loss of a hand or foot means complete severance through or above the wrist or ankle joint. Loss of sight of an eye means total and irrecoverable loss of the entire sight in that eye. Loss of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. Loss of speech means total and irrecoverable loss of the entire ability to speak. Loss of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one loss or paralysis is sustained by a Covered Person as a result of the same accident, only one amount, the largest, will be paid.

2. **Seat Belt Benefit.** The Company will pay the Seat Belt Benefit Amount indicated in the Schedule to the Covered Person's beneficiary, if the Covered Person suffers an accidental death such that an accidental death benefit is payable under this endorsement and the accident causing death occurs while the Covered Person is operating, or riding as a passenger in, an Automobile and wearing a properly fastened, original, factory-installed seat belt.

**B. ACCIDENT INSURANCE EXCLUSIONS**

No coverage shall be provided under this endorsement and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury:

1. suicide or any attempt at suicide or intentionally self-inflicted Injury or any attempt at intentionally self-inflicted Injury or any act of autoeroticism.

2.  sickness or disease, or mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

3.  the Covered Person's commission of or attempt to commit a crime.

4.  declared or undeclared war, or any act of declared or undeclared war regardless of whether the Policy to which this endorsement is attached provides such coverage.

5.  infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

6.  full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority. (Unearned premium for any period for which the insured is not covered due to his or her active duty status will be refunded) (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded).

7.  travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the Covered Person is:

    a.  riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or

    b.  performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or

    c.  riding as a passenger in an aircraft owned, leased or operated by the Named Insured or the Covered Person's employer.

8.  the Covered Person being under the influence of intoxicants.

9.  the Covered Person being under the influence of drugs unless taken under the advice of and as specified by a Physician.

10. the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

11. stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

12. the Covered Person riding in or driving any type of motor vehicle as part of a speed contest or scheduled race, including testing such vehicle on a track, speedway or proving ground.

## C.  ACCIDENT INSURANCE LIMITATIONS

AD&D and Paralysis Aggregate Limit - The maximum amount payable under the Accidental Death & Dismemberment and Paralysis Benefit may be reduced if more than one Covered Person suffers a loss or paralysis as a result of the same accident. The maximum amount payable for all such losses and types of paralysis for all Covered Persons will not exceed the amount shown as the AD&D and Paralysis Aggregate Limit in the Schedule. If the combined maximum amount otherwise payable for all Covered Persons must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each Covered Person for all such losses and types of paralysis. The AD&D and Paralysis Aggregate Limit is in addition to the Policy's General Aggregate Limit.

## D.  ACCIDENT INSURANCE DEFINITIONS

Automobile - means a self-propelled private passenger motor vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of any state or country. Automobile

PRG 6004 (Ed. 3/03)                    3

includes, but is not limited to, a sedan, station wagon, or jeep-type vehicle and, if not used primarily for occupational, professional or business purposes, a motor vehicle of the pickup, panel, van, camper or motor home type. Automobile does not include a mobile home or any motor vehicle which is used in mass or public transit.

**Covered Activity (ies)** - means those activities set out as **Covered Activity (ies)** in the Schedule with respect to which Covered Persons are provided coverage under this endorsement.

**Covered Person** - means a person: (1) who is a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the Schedule; (2) for whom premium has been paid; and (3) while such person's coverage under this endorsement is in force.

**Hemiplegia** means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Immediate Family Member** - means a person who is related to the Covered Person in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

**Injury** - means an injury to the body: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Activity** applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under this endorsement.

**Limb** means entire arm or entire leg.

**Paraplegia** means the complete and irreversible paralysis of both lower **Limbs**.

**Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Covered Person; (2) an **Immediate Family Member**; or (3) retained by the Named Insured.

**Quadriplegia** means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Schedule** - means the Accident Insurance Declarations section of this endorsement.

### E.  ACCIDENT INSURANCE CLAIMS PROVISIONS

**Notice of Claim.** Written notice of a claim for benefits must be given to us within 20 days after a Covered Person's loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to us in care of AIG Claim Services, P.O. Box 15701, Wilmington, DE 19850-5701, or by calling 1-800-551-0824 with information sufficient to identify the Covered Person, is deemed notice to us.

**Claim Forms.** We will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the Covered Person's name, the Named Insured's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to us within 90 days after the date of the loss. If the loss is one for which this endorsement requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as we may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a **Covered Person** will be made, in equal shares, to the survivors in the first surviving class of those that follow: the **Covered Person's** (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at our option, to any relative by blood or connection by marriage of the payee, who, in our opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment we make in good faith fully discharges our liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable for any loss other than loss for which this endorsement provides any periodic payment will be paid immediately upon our receipt of due written proof of the loss. Subject to our receipt of due written proof of loss, all accrued benefits for loss for which this endorsement provides periodic payment will be paid at the expiration of each month during the continuance of the period for which we are liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

**Physical Examination and Autopsy.** We at our own expense have the right and opportunity to examine the person of any individual whose loss is the basis of claim hereunder when and as often as we may reasonably require during the pendency of the claim and to make an autopsy in case of death where it is not forbidden by law.

## F.  ACCIDENT INSURANCE ADDITIONAL PROVISIONS

**Covered Person's Effective Date.** A **Covered Person's** coverage under this endorsement begins on the latest of: (1) the Accident Insurance Effective Date; (2) the date the person becomes a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Schedule.

**Covered Person Termination Date.** A **Covered Person's** coverage under this endorsement ends on the earliest of: (1) the date the Policy is terminated; (2) the date this endorsement is terminated; or (3) the date the **Covered Person** ceases to be a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Schedule.

Termination of coverage will not affect a claim for a covered loss that occurred while the **Covered Person's** coverage under this endorsement was in force.

All other terms, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in states where Applicable)

## ENDORSEMENT

**This endorsement, effective 12:01 A.M.,   10/01/2006**
**Forms a part of Policy No:     2344815 - 02**
**Issued to:     WPS INDUSTRIES INC   WPS INDUSTRIES INC**
**By:     LEXINGTON INSURANCE COMPANY**

### Construction Management Definition

In consideration of the premium charged, it is agreed that the Policy, DEFINITIONS, is amended to include the following:

"Construction Management", shall mean the providing of construction expertise in the form of recommendations to the owner and design professional(s) during the planning and design phases, the scheduling of construction and the overall coordination of the separate prime contractors during the construction phase.

All other terms, conditions and exclusions of this policy remain unchanged.

Authorized Representative or
Countersignature (in states where Applicable)

AE-012 (07/02)

## ENDORSEMENT

This endorsement, effective 12:01 A.M.    10/01/2006

Forms part of Policy NO.:    2344815 - 02

Issued to:    WPS INDUSTRIES INC    WPS INDUSTRIES INC

By:    LEXINGTON INSURANCE COMPANY

## CUSTOMIZED SYSTEMS DESIGN ENDORSEMENT

In consideration of the premium charged, it is agreed that such coverage as is afforded by the policy includes liability arising out of engineering design, drawings, specifications and layout of customized systems and processes.

It is further agreed that the policy does not apply to:

1) manufacturing, fabrication, erection or design of any product, other than design of a product specifically designed for a customized system or process;
2) any liability arising out of subsequently manufactured products using the same design.

For purposes of definition, it is agreed that erroneous selection of a standard "patented" or "shelf" product shall be deemed to be a design error as respects a customized system or process.

All other terms, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in states where Applicable)

AE-018 (07/02)

## ENDORSEMENT

**This endorsement, effective 12:01 AM:**    10/01/2006
**Forms a part of policy no.:**    2344815 - 02
**Issued To:**    WPS INDUSTRIES INC    WPS INDUSTRIES INC
**By:**    LEXINGTON INSURANCE COMPANY

### Amend Exclusion H3

In consideration of the premium charged, it is understood and agreed that **EXCLUSIONS** H. is deleted and replaced as follows:

1. any claim based upon or arising out of the cost to repair or replace any faulty workmanship, assembly, construction, erection, fabrication, installation or remediation.

All other terms, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in states where Applicable)

AE-021 (07/02)

## ENDORSEMENT

This endorsement, effective 12:01 A.M.    10/01/2006
Forms a part of Policy No:    2344815 - 02
Issued to:    WPS INDUSTRIES INC    WPS INDUSTRIES INC
By:    LEXINGTON INSURANCE COMPANY

## Additional Claim Exclusions

In consideration of the premium charged, it is hereby understood and agreed that any "claim" based upon or arising out of the following are excluded:

1)    the acquisition of any real estate or the securing of financing for the acquisition of any real estate;

2)    the advising or requiring of, or failure to advise or require of failure to maintain or procure any financing or monies for the payment of any portion or any project, or of services or labor connected with any project;

3)    cost overruns or the exceeding of any budget or other cost limitation;

4)    failure to complete any construction in a timely manner or within a prescribed period of time;

5)    the insolvency or bankruptcy of the Insured or any contractor, subcontractor or supplier of the Insured;

6)    the preparation or failure to prepare any safety precautions or procedures in connection with any project;

7)    the preparation or failure to prepare quantity surveys;

All other terms, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in states where Applicable)

AE-022 (07/02)

## ENDORSEMENT NO.

This Endorsement, effective   10/01/2006
Forms part of Policy No.:    2344815 - 02
Issued to:   WPS INDUSTRIES INC
Dba:     WPS INDUSTRIES INC
By:   LEXINGTON INSURANCE COMPANY

### ADDITIONAL NAMED INSURED

In consideration of the premium charged at inception, it is hereby understood and agreed that ITEM #1,
Named Insured is amended to include the following:

WPS INDUSTRIES, INC

KRALCO, LLC

WPS AIR HANDLING, LLC

MECRON CONTRACTORS, LLC

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative or
Countersignature (in states where Applicable)

ANI (11/97)

GRENZEBACH CORPORATION

565233
DOCKET NO.

SEC. 8

19TH JUDICIAL DISTRICT COURT

VERSUS

WPS INDUSTRIES, INC. AND
LEXINGTON INSURANCE
COMPANY

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

PETITION FOR DAMAGES

NOW INTO COURT, comes **GRENZEBACH CORPORATION**, domiciled in Newnan,

Coweta County, Georgia, who respectfully represents:

1.

Made Defendants are:

A.     **WPS INDUSTRIES, INC.,** a domestic company authorized to do and doing
business in the State of Louisiana, who has by operation of Louisiana Revised Statute
13:3471 appointed Anthony G. Clark as its agent for service of process and can be
served at 3300 English Turn, Ruston, Louisiana 71270; and

**LEXINGTON INSURANCE COMPANY,** a foreign insurance company authorized
to do and doing business in the State of Louisiana, who has by operation of Louisiana
Revised Statute 13:3471 appointed Jay Dardenne, Secretary of State for the State of
Louisiana as its agent for service of process and can be served at 8549 United Plaza
Blvd., Baton Rouge, Louisiana.

2.

Plaintiff, GRENZEBACH CORPORATION, contracted with Defendant, WPS

INDUSTRIES, INC., a Louisiana corporation, to design and fabricate certain equipment at its facility

located in Lincoln Parish, Louisiana. At the time of the incident sued upon, Defendant, WPS

INDUSTRIES, INC., was insured by LEXINGTON INSURANCE COMPANY, a foreign insurer,

and according to Article 42 of the Louisiana Code of Civil Procedure, venue is proper in East Baton

Rouge Parish, Louisiana.

3.

On or about January 13, 2002, Plaintiff, GRENZEBACH CORPORATION, contracted with

Defendant, WPS INDUSTRIES, INC. (the Contract) for sufficient consideration, to design and

fabricate certain equipment to be manufactured in Louisiana and transported to Blandon,

Pennsylvania, and installed by Defendant, WPS INDUSTRIES, INC. (the Project) at the facility of

one of Plaintiff's most valued customers, James Hardie Building Products (Hardie), which Hardie

would thereafter use to manufacture its own product, Hardie Plank. Specifically, the Contract called

CERTIFIED TRUE COPY

005069

DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA.
FILED

2008 APR 14 PM 4:02



EXHIBIT
E

for the design of a customized system to be utilized by Hardie in the process of manufacturing Hardie Plank and for packaging it for shipment to customers.

4.

After transporting and installing the equipment at its desired location, it became evident to Hardie and Plaintiff that the equipment, due to design defects, did not perform properly, resulting in problems which lingered for months and said problems increased, rather that decreased. Plaintiff requested on numerous occasions that Defendant, WPS INDUSTRIES, INC., correct the defectively designed equipment, however, Defendant, WPS INDUSTRIES, INC. failed to make the appropriate corrections.

5.

Due to the unsatisfactory nature of the performance and work product of Defendant's, WPS INDUSTRIES, INC.'s work, Hardie informed Plaintiff that Defendant, WPS INDUSTRIES, INC. would not be allowed to perform any additional work on the Project. Further, Hardie demanded that Plaintiff cause others to immediately take steps to re-design the equipment so as to remedy the problems and deficiencies caused by Defendant's, WPS INDUSTRIES, INC.'s defective design.

6.

In an effort to save the important business relationship between Plaintiff and Hardie, Plaintiff was forced to adhere to the provisions of the Contract between Plaintiff and Defendant, WPS INDUSTRIES, INC., which specifically provided that if Defendant, WPS INDUSTRIES, INC. failed to eliminate indicated defects, Plaintiff had the right to initiate the necessary measures to correct the deficiencies at Defendant's, WPS INDUSTRIES, INC.'s, expense and risk.

7.

Pursuant to the terms of said Contract, Plaintiff exercised its rights and caused the deficiencies in Defendant's, WPS INDUSTRIES, INC.'s design to be performed by others.

8.

Plaintiff further advised Defendant, WPS INDUSTRIES, INC. that, pursuant to the Contract, all costs associated with having the deficiencies corrected would be charged to Defendant against the remaining balance of the Contract.

9.

The deficiencies described above were caused solely and proximately by the gross and flagrant recklessness, carelessness, negligence and fault of WPS INDUSTRIES, INC. in the

following, non-exclusive, particulars, to-wit:

    A.    Defective work product;

    B.    Failure to properly design equipment;

    C.    Failure to remedy defectively designed equipment;

    D.    Failure take monetary responsibility from Plaintiff in correcting the defectively designed equipment;

    E.    Any and all other damages which shall be proven at trial of this matter.

10.

Plaintiff is informed, believes, and therefore alleges that at the time of the Project WPS INDUSTRIES, INC. had a policy of Architects & Engineers Professional Liability insurance with LEXINGTON INSURANCE COMPANY, insuring against the negligent acts, defective work and improper design of WPS INDUSTRIES, INC. and under the laws of the State of Louisiana was in full force and effect at the time of the incident and which insurance inures to the benefit of Plaintiff under the provisions of the Louisiana Direct Action Statute, Revised Statute 22:655.

11.

Plaintiff further alleges on information and belief that under the terms of said policy, LEXINGTON INSURANCE COMPANY, obligated itself to pay any and all damages caused to others as a result of the negligence, defective work and improper design of WPS INDUSTRIES, INC., the subcontractor of said Project, covered by said policy at the time of said incident.

12.

Plaintiff alleges on information and belief that at the time of the incident described above, WPS INDUSTRIES, INC. was covered by an architects & engineers professional liability insurance policy, which had been sold and delivered by LEXINGTON INSURANCE COMPANY and was then in full force and effect by virtue of the payment of premiums and otherwise.

13.

WPS INDUSTRIES, INC. and LEXINGTON INSURANCE COMPANY are therefore liable in solido unto the Plaintiff in said incident, which are itemized and set out hereafter.

14.

As a result of the combined fault, negligence, and/or strict liability of the Defendants in causing the aforementioned incident, Plaintiff GRENZEBACH CORPORATION, suffered severe injuries including, but not limited to the following:

A.    Expenses in remedying the deficiencies caused by Defendant, WPS

INDUSTRIES, INC. at the Project which Plaintiff is entitled to recover from

Defendant, WPS INDUSTRIES, INC., less any monies which Plaintiff would

otherwise have owed Defendant, WPS INDUSTRIES, INC. pursuant to the

Contract;

B.    Loss of Contracts;

C.    Any and all other injuries to be shown upon trial of this matter.

15.

Pursuant to the provisions of the Louisiana Code of Civil Procedure, Article 1423, et seq., the

Plaintiff is entitled to a certified copy of any insurance policies issued to and/or otherwise insuring

WPS INDUSTRIES, INC. for the claims made by Plaintiff herein.  Plaintiff herein requests a

certified copy of any and all such policies of insurance within thirty (30) days of service of the

petition upon them.

16.

The Plaintiff herein, GRENZEBACH CORPORATION, is therefore entitled to damages for

the items set forth above in such amounts as are reasonable in the premises.

WHEREFORE Plaintiff PRAYS:

1.    That certified copies of this petition, together with citation, be issued and served

according to law on the Defendants:

A.    WPS INDUSTRIES, INC., a domestic company authorized to do and doing

business in the State of Louisiana, who has by operation of Louisiana Revised

Statute 13:3471 appointed Anthony G. Clark as its agent for service of

process and can be served at 3300 English Turn, Ruston, Louisiana 71270;

and

B.    LEXINGTON INSURANCE COMPANY, a foreign insurance company

authorized to do and doing business in the State of Louisiana, who has by

operation of Louisiana Revised Statute 13:3471 appointed Jay Dardenne,

Secretary of State for the State of Louisiana as its agent for service of process

and can be served at 8549 United Plaza Blvd., Baton Rouge, Louisiana.

1.    After the elapse of all legal delays and proceedings had, there be judgment against

WPS INDUSTRIES, INC. and LEXINGTON INSURANCE COMPANY, in solido,

and in favor of GRENZEBACH CORPORATION, in such amounts as are reasonable

in the premises;

2.     For all necessary orders and decrees as may be required or proper for full, general and

equitable relief; and

3.     For legal interest from date of judicial demand on all amounts awarded, and for all

costs of these proceedings.

RESPECTFULLY SUBMITTED:

MURPHY LAW FIRM

PEYTON P. MURPHY
Bar Roll # 22125
7035 Jefferson Highway
Baton Rouge, La. 70809
Telephone: (225) 928-8800
Facsimile: (225) 928-8802

**ATTORNEY FOR PLAINTIFF**

**PLEASE SERVE:**

WPS INDUSTRIES, INC.
Anthony G. Clark, Agent for service of process
3300 English Turn
Ruston, Louisiana 71270;

LEXINGTON INSURANCE COMPANY
through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809



GRENZEBACH CORPORATION

VERSUS

WPS INDUSTRIES, INC. AND
LEXINGTON INSURANCE
COMPANY

DOCKET NO.                SEC.

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

---

## REQUEST FOR TEN DAYS NOTICE OF SETTING AND

## FOR NOTICE OF INTERLOCUTORY ORDER OR JUDGMENT

---

Plaintiff, **GRENZEBACH CORPORATION**, request that he be given at least ten (10) days

written notice in advance, in accordance with the provisions of Article 1572 of the Louisiana Code of

Civil Procedure, of the date this case is to be fixed for trial.  Plaintiff further requests written notice

of the rendition of any interlocutory order or judgment in this case, pursuant to Article 1914 of the

Louisiana Code of Civil Procedure.


                                        MURPHY LAW FIRM


                                        PEYTON P. MURPHY (22125)
                                        7035 JEFFERSON HIGHWAY
                                        BATON ROUGE, LA. 70806
                                        Telephone: (225) 928-8800
                                        Facsimile: (225) 928-8802

                                        ATTORNEY FOR PLAINTIFF