UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **GRENZEBACH CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | |
| **WPS INDUSTRIES, INC. and** | |
| **LEXINGTON INSURANCE COMPANY** | **NO. 08-217-B-M2** |

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in chambers in Baton Rouge, Louisiana, June 19, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **GRENZEBACH CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | |
| **WPS INDUSTRIES, INC. and** | |
| **LEXINGTON INSURANCE COMPANY** | **NO. 08-217-B-M2** |

### MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Remand (R. Doc. 7) filed by plaintiff, Grenzebach Corporation ("Grenzebach"). Defendant, Lexington Insurance Company ("Lexington"), has filed an opposition (R. Doc. 12) to that motion, in response to which Grenzebach has filed a "Supplemental Memorandum in Support of Motion to Remand." (R. Doc. 19).

### FACTS & PROCEDURAL BACKGROUND

On or about September 16, 2004, WPS Industries, Inc. ("WPS") filed suit against Grenzebach in the 3rd Judicial District Court, Parish of Lincoln, State of Louisiana. In that suit, WPS sought recovery of unpaid amounts pursuant to a contract between it and Grenzebach. Under that contract, WPS was to design and fabricate certain equipment and to install that equipment at the premises of one of Grenzebach's clients, James Hardie Building Products ("Hardie"). That case was removed to federal court and transferred to the U.S. District Court for the Northern District of Georgia ("Georgia suit"). On or about August 25, 2005, Grenzebach answered WPS's complaint and filed a counterclaim against WPS, alleging that the equipment designed, fabricated, and installed by WPS did not perform properly due to design defects and that it was entitled to damages for expenses

1

incurred in remedying the alleged deficiencies caused by WPS[1] as well as for a loss of contract(s).[2]

On March 18, 2008, Grenzebach filed the present suit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, against both WPS and its liability insurer, Lexington, asserting allegations relating to the same subject matter and contract as the Georgia suit. Grenzebach again asserts that WPS, and/or its liability insurer, are responsible for WPS's defective design, fabrication and installation work as well as for a loss of contracts. In other words, the only substantive difference between the present suit and Grenzebach's counterclaims against WPS in the Georgia suit is that Lexington is named as a defendant herein pursuant to Louisiana's Direct Action Statute, La. R.S. 22:655.[3]

---

[1] The contract between Grenzebach and WPS allegedly provided that, if WPS failed to eliminate indicated defects in the equipment, Grenzebach had the right to initiate the necessary measures to correct the deficiencies at WPS's risk and expense. Pursuant to the contract, Grenzebach exercised its rights and caused the deficiencies in WPS's work to be cured as best as possible through re-designing the equipment. Grenzebach incurred approximately $484,169.75 in expense to remedy the deficiencies allegedly caused by WPS. WPS claimed that it was owed $221,443.00 for the work it performed on the project; thus, in its counterclaim, Grenzebach asserted that WPS owed it the difference between the amount incurred to remedy the deficiencies and the amount Grenzebach owed for WPS's work, or $262,726.75.

[2] In its counterclaim, Grenzebach alleges that, as a result of WPS's defective work and the problems resulting therefrom, its business relationship with Hardie was "severely damaged," leading to the loss of a job with Hardie with projected profits of $5,000,000.00 to Grenzebach.

[3] The reason Lexington was not named as a defendant in the Georgia suit is because Georgia law does not provide for a direct action by an injured third party against an insurer. In Georgia, an action on a policy of insurance must be brought in the name of the holder of the legal title thereto, *i.e.*, the insured. *Westbrook v. Nationwide Ins. Co.*, 113 Ga.App. 299, 147 S.E.2d 819 (Ga.App. 1966) Thus, unless a policy of insurance is duly assigned to the injured third party in writing by the insured,

On April 14, 2008, Lexington removed Grenzebach's 19th Judicial District Court suit to this Court pursuant to 28 U.S.C. §1332 and §1441 on the basis of diversity of citizenship. On April 29, 2008, the Northern District of Georgia entered a Consent Order and Judgment based upon the settlement of WPS's and Grenzebach's claims against one another in the Georgia suit,[4] and that suit was subsequently closed. On May 9, 2008, Grenzebach filed the present motion to remand this case to state court based upon 28 U.S.C. §1441(b), because WPS is a Louisiana corporation with its principal place of business in Louisiana.

## LAW & ANALYSIS

---

the only person who can bring an action against an insurer is the insured. *Walker v. General Ins. Co.*, 214 Ga. 758, 107 S.Ed.2d 836 (Ga. 1959). By contrast, Louisiana law allows an injured third party to bring a direct action against an alleged tortfeasor's insurer under Louisiana's Direct Action Statute, La. R.S. 22:655. Because Lexington refused to defend and extend coverage to its insured, WPS, in the context of the Georgia suit on the ground that WPS failed to provide timely notice of the claim, Grenzebach filed the present suit in the 19th Judicial District Court, naming Lexington and WPS as defendants, in order to protect its rights against those entities. WPS was named as a defendant in this suit because La. R.S. 22:655 provides that an action may be brought against an insurer alone only when:  (a) the insured has been adjudged bankrupt or proceedings to adjudge an insured bankrupt have commenced; (b) the insured is insolvent; (c) service of citation or other process cannot be made on the insured; (d) the cause of action is for damages resulting from an offense or quasi-offense between children and their parents or between married persons; (e) the insurer is an uninsured motorist carrier; or (f) the insured is deceased. La. R.S. 22:655(B)(1)(a)-(f). Since none of the above circumstances apply in the present matter, Grenzebach was required to join WPS as a defendant when it filed this direct action against Lexington.

[4] In connection with that settlement, whereby Grenzebach agreed to dismiss its claims against WPS in exchange for payment of $262,726.75, WPS also assigned to Grenzebach "all rights, claims, and causes of action, including but not limited to, bad faith, and benefits to which it is or would be entitled to under any insurance policy issued by Lexington, with the exception of any claim by WPS against Lexington for attorneys' fees and expenses arising from Lexington's failure to provide a defense to WPS for claims made by Grenzebach in the [Georgia] lawsuit." *See,* "Assignment" in Georgia suit, dated March 20, 2008, R. Doc. 14-6.

3

Pursuant to 28 U.S.C. §1441(b), an action for which there is diversity jurisdiction, such as the present case,[5] "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. §1441(b). "Citizenship" of a corporation is based upon either the corporation's state of incorporation or the state where the corporation has its principal place of business. 28 U.S.C. §1332(c)(1). Because WPS is both incorporated and has its principal place of business in Louisiana, it is a citizen of Louisiana for purposes of 28 U.S.C. §1441(b). Thus, in determining whether this matter should be remanded based upon §1441(b), the issue becomes whether or not WPS was a "properly joined and served" defendant at the time Lexington removed this matter. Although Lexington contends in its Notice of Removal that WPS had not been "properly joined and served" at the time of removal, it offers no evidence substantiating that assertion, such as an affidavit from WPS's agent for service of process indicating that service had not been perfected at that time.

As the party removing the plaintiff's claims to federal court, Lexington bears the burden of proving a basis for federal subject matter jurisdiction, not Grenzebach. *Grank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997). By arguing that the Court's subject matter jurisdiction is based upon diversity of the parties' citizenship, Lexington must prove that "none of the parties in interest properly joined and served as defendants is a citizen of the State in which [this] action is brought." *Omda Oil and Gas, Inc. v. Young Oil,*

---

[5] There appears to be complete diversity of citizenship among the plaintiff and defendants in this suit, in that Grenzebach is a Georgia corporation with its principal place of business in Newman, Georgia; Lexington (a foreign insurer) is a Delaware corporation with its principal place of business in Boston, Massachussetts; and WPS is a Louisiana corporation with its principal place of business in Louisiana.

*Corp.* 2006 WL 1343640 (N.D. Tex. 2006). Given that the Court is to evaluate all of the factual allegations in the plaintiff's complaint in the light most favorable to the plaintiff and resolve all contested issues of substantive fact in its favor,[6] the Court cannot simply rely upon Lexington's assertion that WPS was unserved at the time of removal without receiving any evidentiary support for that assertion. Furthermore, with its supplemental memorandum in support of its motion to remand, Grenzebach has submitted evidence indicating that WPS was, in fact, served, through domiciliary service upon its officer, John Passman, on April 3, 2008, prior to removal of this matter. Accordingly, Lexington's removal cannot be sustained on the basis that WPS was not properly served at the time of removal.

However, Lexington asserts another novel argument in support of removal. Specifically, Lexington argues that, even if WPS was properly served at the time of removal, federal diversity jurisdiction nevertheless exists based upon the "voluntary-involuntary rule" recognized by the Fifth Circuit Court of Appeals. Such rule provides that a case that is nonremovable based upon its initial pleadings for lack of diversity can become removable based upon a voluntary act by the plaintiff, such as the voluntary dismissal of a nondiverse defendant. *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545 (5th Cir. 1967); *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir. 2006). Lexington contends that the Consent Order and Judgment, resulting from the settlement of Grenzebach's counterclaims against WPS in the context of the Georgia suit, is conclusive of all claims herein between Grenzebach and WPS, and as a result, Grenzebach has no

---

[6] *See, Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995).

viable claims against WPS, the nondiverse defendant, under *res judicata* principles. Thus, removal was appropriate on the basis of the "voluntary-involuntary" rule.

The problem with Lexington's argument is that, even assuming the settlement and judgment in the Northern District of Georgia suit disposed of all claims between Grenzebach and WPS and that the *res judicata* doctrine and the "voluntary-involuntary rule" apply herein,[7] such that WPS is no longer a proper defendant in this action,[8]

---

[7] Such doctrine and rule are likely applicable herein. First, it has been recognized that a settlement between a plaintiff and the only resident defendant in an action constitutes a "voluntary" act for purposes of the "voluntary-involuntary rule," thereby giving the remaining defendants the right of removal. *Higgins v. Pittsburgh-Des Moines Co.*, 635 F.Supp. 1182 (S.D. Tex. 1986); *Horton v. Scripto-Tokai Corp.*, 878 F.Supp. 902 (S.D. Miss. 1995). Although the undersigned was unable to locate any jurisprudence wherein a settlement with a nondiverse defendant in a *related* case was considered to be a "voluntary" act rendering a pending case removable, the undersigned nevertheless finds that such a result is possible based upon the Fifth Circuit Court of Appeals' decisions concerning removability under 28 U.S.C. §1446(b).

Pursuant to 28 U.S.C. §1446(b), if a case stated by an initial pleading is not removable, a petition for removal may be filed within thirty (30) days "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §1446(b). The Fifth Circuit has held that a decision in a *related* case involving a *common defendant and similar facts* can trigger removability of a pending case under 28 U.S.C. §1446(b). *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263 (5th Cir. 2001). Thus, it appears that Lexington could predicate removal of this case upon Grenzebach's voluntary dismissal/settlement with WPS in the Georgia suit involving the same subject matter, as long as such ground for removal was raised herein within thirty (30) days after Lexington received, through service or otherwise, a copy of the order (here, the Northern District of Georgia's Consent Order and Judgment) from which it first became ascertainable that this case

---

was removable. Although Lexington had already filed its Notice of Removal on April 14, 2008, prior to the Consent Order and Judgment being entered in the Georgia suit on April 29, 2008, Lexington nevertheless raised its "voluntary-involuntary rule" argument through its opposition brief filed with this Court within thirty (30) days of that Consent Order and Judgment, on May 29, 2008. Accordingly, that basis for removal jurisdiction appears to have been timely asserted.

Furthermore, it appears that the doctrine of *res judicata* applies as to Grenzebach's claims against WPS. Res judicata bars an action when a court of competent jurisdiction has rendered a prior judgment in an action in which: (1) the parties are the same; (2) there has been a final judgment on the merits; and (3) the same cause of action is involved. *Gulf South Medical and Surgical Institute v. Aetna Life Insurance Co.*, 2006 WL 394987, *1 (5th Cir. 2006), citing *Test Masters Ed. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). The doctrine applies herein because: (1) both Grenzebach and WPS were involved in the Georgia suit; (2) the Northern District of Georgia previously entered a Consent Order and Judgment based upon the voluntary dismissal/settlement of Grenzebach's claims against WPS (*See, Matter of W.Tex.Mktg. Corp.*, 12 F.3d 497, 500-01 (5th Cir. 1994)(stating that a settlement agreement approved and incorporated into a judgment must be given full res judicata effect); *In re Gilbraltar Resources, Inc.*, 210 F.3d 573 (5th Cir. 2000)); and (3) Grenzebach has asserted the same cause of action against WPS herein that was asserted in the Georgia court. Res judicata, of course, does not apply to Grenzebach's claims against Lexington, as Lexington was not a party to the Georgia suit because Georgia law does not allow for a direct action by an injured third party against an insurer, unless an insured assigns his rights against the insurer to the third party in writing. While such an assignment of WPS's rights against Lexington to Grenzebach ultimately occurred, the assignment occurred on March 20, 2008, after Grenzebach had already filed this direct action suit against Lexington in Louisiana to protect its rights against that entity.

[8] WPS no longer appears to be a proper defendant in this action because the settlement agreement between WPS and Grenzebach in the Georgia suit specifically provided that "payment of any judgment of any type, in whole or in part, against WPS in favor of Grenzebach in the [Georgia litigation] shall come exclusively from, and be limited to, the contractual and common law obligations of Lexington." *See*, Exhibit 5 to Grenzebach's supplemental memorandum in support of its remand motion, p. 2. Accordingly, by virtue of that settlement agreement being approved and adopted by the Georgia court as a final judgment on the merits, Grenzebach's only rights to payment for the actions of WPS in this suit are against Lexington. *See, Id.*, p. 3 (which provides that WPS and Grenzebach agreed that the "express purpose of their [settlement agreement] is to allow Grenzebach, directly as provided by Direct Action Statute, La. R.S. 22:655 and/or as an assignee of WPS, to fully pursue and prosecute any and all rights or claims WPS or Grenzebach may have against Lexington for insurance

7

Lexington, as WPS's insurer, is nevertheless considered a citizen of Louisiana pursuant to 28 U.S.C. §1332(c)(1).  Section 1332(c)(1) provides that, in any direct action against the insurer of a policy or contract of liability insurance, to which the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen.  28 U.S.C. §1332(c)(1).  Thus, even if WPS is dismissed from this matter based upon the *res judicata* doctrine and the "voluntary-involuntary rule," Lexington is nevertheless considered a Louisiana citizen by virtue of its insured's citizenship, and 28 U.S.C. §1441(b) therefore precludes removal of this case because Lexington is a citizen of the state in which this action was brought.[9]  Accordingly, Grenzebach's motion to remand

---

coverage, bad faith, attorneys' fees, costs, and such further and other relief as a Court may deem just and proper, with WPS reserving for its own interests any claim for attorneys' fees and expenses arising out of the failure of Lexington to provide a defense to WPS with regard to Grenzebach's counterclaim [in the Georgia suit].  In the event it is finally determined by a court of competent jurisdiction or an arbitration tribunal . . . that Grenzebach is not entitled to collect any judgment of any type . . . against Lexington under the Policy, Grenzebach agrees that it will not seek execution on any judgment of any type . . . against WPS");  *See also*, "Covenant Not to Enforce Judgment," Exhibit R. Doc. 17-6 (wherein Grenzebach covenanted and promised that it will not take any action to collect upon, execute or enforce, in whole or in part, any judgment or lien entered in its favor against WPS in the Georgia suit but would solely seek recovery of insurance benefits from Lexington).

[9] *See, O.M. Greene Livestock Co. v. Azalea Meats, Inc.*, 516 F.2d 509 (5th Cir. 1975)(holding that the result of the plaintiff's voluntary dismissal of the insured defendant was a "direct action" against the insurer for purposes of the diversity statute, with the result that the insurer was deemed a citizen of the state of which the insured was a citizen, defeating diversity jurisdiction); *Wallington v. Essex Insurance Co.*, 1998 WL 273118 (E.D. La. 1998)(where the insured-defendants were voluntarily dismissed by the plaintiff prior to removal, the defendant insurance company was deemed a citizen of Louisiana pursuant to 28 U.S.C. §1332(c) for purposes of determining removal jurisdiction); *American States Insurance Co. v. Gates Corp.*, 2008 WL 163588 (E.D. Mo. 2008)(where an insured and an insurer were sued by an injured third party in an equitable garnishment action, which was considered a "direct action" against the insurer,  the court determined that the insured's interests were more properly aligned with that of the plaintiff and therefore re-aligned the insured as a party plaintiff.  The

this case to the 19th Judicial District Court, Parish of East Baton Rouge,[10] grounded upon §1441(b), should be granted.

## RECOMMENDATION

For the above reasons, it is recommended that the Motion to Remand (R. Doc. 7)

---

court then applied §1332(c)(1) and found that the insurer was a citizen of the state of which the insured was a citizen, which destroyed diversity jurisdiction); *Saylab v. Harford Mutual Insurance Co.*, 271 F.Supp.2d 112 (D.D.C. 2003)(recognizing that §1332(c)(1) applies where the insured is re-aligned as a party plaintiff if the action is a "direct action." To be a "direct action," an injured party (not the insured) must be seeking to extract payment from the insurer for the actions of the insured; rather than seeking a declaration of coverage).

Thus, under the above jurisprudence, even if the insured is initially joined as a defendant in a suit against the insurer for payment of monetary amounts resulting from the actions of the insured, if the insured is voluntarily dismissed or re-aligned as a party plaintiff, §1332(c)(1) applies, and the insurer takes on the citizenship of the insured. A dismissal of WPS from this suit based upon *res judicata* principles and the "voluntary-involuntary rule" would stem from a voluntary act on Grenzebach's part in settling the Georgia suit and would result in this case being solely a "direct action" suit against Lexington for payment of sums allegedly due under an insurance policy because of the actions of the insured, WPS. Thus, 28 U.S.C. §1332(c)(1) would apply herein, rendering Lexington a Louisiana citizen, and based upon 28 U.S.C. §1441(b), removal jurisdiction would not exist.

The Court also notes, that even if La. R.S. 22:655(B)(1)(a)-(f), discussed above in Footnote 3, requires that WPS be a named defendant in this action and Lexington's *res judicata*/"voluntary-involuntary rule" argument does not apply, this case should nevertheless be remanded because WPS, a Louisiana citizen, would remain in this suit as a nominal defendant, thereby also precluding removal based upon 28 U.S.C. §1441(b).

[10] The 19th Judicial District Court, Parish of East Baton Rouge, is the appropriate venue for this suit because La. R.S. 22:655 provides that an "injured person . . . shall have a right of direct action against the insurer . . . in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42." La. C.C.Pr. art. 42(7) provides that an action against a foreign or alien insurer, such as Lexington, *shall* be brought in the Parish of East Baton Rouge. La. C.Cr.P. art. 42(7)[Emphasis added].

filed by plaintiff, Grenzebach Corporation, be **GRANTED** and that this matter be **REMANDED** to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, June 19, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**